UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:     CASE NO. 06-10059

IMG HEALTHCARE, LLC     SECTION "B"

    DEBTOR     CHAPTER 11

## MEMORANDUM OPINION

This matter came on for hearing on February 27, 2008 on the objection by the trustee for the creditor's trust ("Trustee") to claim number 40 filed by Hunter Medical Systems, Inc. ("Hunter"). For the reasons set forth below, the objection is sustained in part and denied in part, and Hunter's claim is allowed as a general unsecured claim in the amount of $771.78.

**I.**     **Background Facts**

Hunter is engaged in the business of providing storage and management of medical records. On November 22, 2003 the debtor, IMG Healthcare, LLC ("IMG") and Hunter entered into a contract for Hunter to provide its services to IMG.[1] The contract was for an initial two year period and had a clause providing for automatic renewal thereafter for one year periods until terminated by either party, which reads in pertinent part:

> The term of this Agreement is for two years commencing on the latter date provided for on signature page of this Agreement and maybe (sic) cancel[l]ed upon written notice of non-renewal by either party to the other not less than sixty days prior to the expiration date. This agreement will automatically renew for additional successive one-year terms if not cancelled in writing 60 days prior to the expiration date.

Hunter provided its services to IMG from the date of the contract through January 15, 2007.

On January 30, 2006 IMG filed a petition for relief under Chapter 11 of the Bankruptcy

---

[1] A copy of the contract can be found attached to Hunter's proof of claim.

Code found at 11 U.S.C. §§ 101 *et seq.* On December 26, 2006 the court confirmed a liquidating plan of reorganization. Under the terms of the plan the executory contract IMG had with Hunter was rejected pursuant to 11 U.S.C. § 365. Although the contract was rejected as of January 6, 2007, the effective date of the plan, Hunter continued to perform under the contract until January 15, 2007. Hunter then filed a proof of claim for damages for rejection of the contract. The parties do not dispute that Hunter was paid for its services until January 15, 2007.

Hunter contends that when IMG did not provide written notice of its intention to cancel the contract by September 22, 2006, the contract automatically renewed for another year until November 22, 2007. Thus, according to Hunter's calculations, it is owed the contract rate it should have been paid for storage of the records from the last day it was paid for its services, January 15, 2007 until the contract was supposed to terminate, November 23, 2007.

## II.     Legal Analysis

The Trustee argues that § 365(g) of the Bankruptcy Code precludes Hunter from making its claim because § 365(g) and § 502 look to the contract as it exists on the petition date. The trustee states that because rejection of a contract constitutes a breach immediately before the filing of the petition, an automatic renewal, like the one that exists here, could not have happened because it occurred after the petition date when the contract had already been rejected. The Trustee's argument is not entirely clear to the court, and he cites no cases supporting his proposition, so the court rejects it.

The contract in question is either a pre-petition contract or a post-petition contract. The court finds that it was a pre-petition contract because as of January 30, 2006, the date the Chapter 11 petition was filed, the contract was not set to expire until November 23, 2006. It was

also an executory contract because both sides still owed each other some part of their performance.[2]  The next question then is what effect the automatic renewal clause had on the contract.  By its terms the agreement would automatically renew itself for another year if no cancellation notification was made in writing 60 days before the expiration date of November 23, 2006, which would be September 22, 2006.  Although the parties decided at the hearing on this matter that they would defer the taking of evidence in this matter until certain legal issues had been resolved, there was no indication that any written notice had been given to Hunter attempting to cancel the contract prior to September 22, 2006.  Thus, the court finds that the contract renewed automatically and thereafter had a new expiration date of November 23, 2007 under the same terms that were in the original contract.[3]

Section 365(a) of the Bankruptcy Code provides that subject to the court's approval the bankruptcy trustee may reject any executory contract or unexpired lease of the debtor.  The Code states that, except in certain narrowly defined circumstances, rejection of an executory contract or unexpired lease constitutes a material breach.[4]  "As a legal fiction, such a breach is deemed to

---

[2] The Code does not define "executory contract," but cases have defined it as a contract on which performance is due to some extent on both sides.  *Matter of Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994) (citing *NLRB v. Bildisco & Bildisco,* 465 U.S. 513,522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984)).

[3] *In re Country Club Estates at Aventura Maintenance Ass'n, Inc.,* 227 B.R. 565 (Bankr. S.D.Fla. 1998) (contract that is renewed pursuant to an automatic renewal provision is continuation of the original contract); *see also Gurley v. Carpenter,* 855 F.2d 194 (5th Cir. 1988) (once insurance policy had been extended by automatic renewal provision, policy coverage continued under the original policy, and insurance company not entitled to make changes to policy).

[4] Section 365(g) states that where a contract has not previously been assumed, rejection constitutes breach immediately before the date of the filing of the petition except as provided in subsections (h)(2) and (i)(2), which are not relevant here.

have occurred on the day immediately prior to the commencement of the bankruptcy so rejection claims are treated as prepetition claims."[5] Thus, the contract is in this case deemed to have been rejected as of January 29, 2006, which has the effect of making the claim for rejection damages in this case a general unsecured claim. Although both parties continued to perform post-petition, that performance was properly paid as an administrative expense. Hunter is making a claim only from January 15, 2007 through November 23, 2007, the date the contract expired. There is nothing unusual or incorrect about that.

The court approved as an administrative expense, a payment to Hunter in the amount of $39,567.21 by order dated February 7, 2007 (P-324) for Hunter's services to the debtor in destroying many of the debtor's medical records held by Hunter as well as payment of past due storage fees and a "medical record transfer cost," which was incurred when IMG moved the remainder of its records to a different storage facility. The motion for payment of Hunter's fees as an administrative expense indicates that Hunter charged the rate set forth in the contract for the document destruction services, so this is consistent with the contract having been renewed by the automatic renewal clause.

Although not raised by the Trustee, the court has noticed a significant problem with Hunter's claim. Attached to the proof of claim is a summary of the damages Hunter claims it is entitled to as rejection damages. Hunter bases this claim on the "average per month" it billed the debtor for three categories: storage, box storage, and retrieval of information services. Thus, according to Hunter, it is entitled to bill the debtor for services it did not perform based on what

---

[5] *Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.,* 83 F.3d 735, 741 (5th Cir. 1996); 11 U.S.C. §§ 365(g) and 502(g).

it had billed the debtor in the past. When in the past is not entirely clear from the summary. The contract between Hunter and IMG, however, generally calls for payment by the service provided. For example, Hunter charges $.25 per cubic foot per month for box storage and $.25 per linear foot for open file storage and $1.00 per box for record retrieval services. The court notes that there is a minimum storage fee of $75 per month contained in the contract, but other than that, the contract entitles Hunter to charge only for services it actually provides. Thus, the court cannot allow a claim based on an average for services Hunter provided in the past. The court sees no reason why it should allow Hunter to charge $8,975.71 for retrieval of information services it did not perform along with $34,163.17 for storage of records that Hunter had already been paid to destroy or that had been transferred to another storage facility.

### III.   Conclusion

The court finds that the majority of Hunter's claim is unsupported by the contract. Hunter is entitled to only the $75 per month minimum storage fee through November 23, 2007. According to Hunter's calculations this is 313 days, which works out to a total of $771.78. The court will allow this as a general unsecured claim.

New Orleans, Louisiana, July 8, 2008.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge